***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission hereby AFFIRMS the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Decedent, Janet Dixon Ingram, was found to be permanently and totally disabled by a final Opinion and Award entered by Deputy Commissioner Lawrence B. Shuping, Jr. on June 21, 1996.
2. Pursuant to the final Opinion and Award, decedent received weekly compensation in the amount of $129.04.
3. On or about February 9, 2000, defendant-carrier filed a Form 33 Request that Claim Be Assigned for Hearing contending that plaintiff's disability was no longer attributable to her injury of January 10, 1993.
4. A deputy commissioner hearing was scheduled in Charlotte, North Carolina, on May 3, 2000, but was continued due to a crowded docket.
5. Before the matter was set for rehearing, employee-plaintiff Janet Dixon Ingram died on May 22, 2000.
6. Employee-plaintiff Janet Dixon Ingram and plaintiff Hubert D. Ingram were married on January 4, 1994 and remained married at the date of plaintiff-employee's death.
7. At the time of the decedent's death, there was a pending Motion to Terminate Rehabilitation filed by decedent on October 28, 1999.
In addition, the parties stipulated into evidence the following:
1. Death Certificate dated May 31, 2000.
2. Funeral bill and payment record.
3. Marriage Certificate.
4. Statements and payment ledgers.
5. 1,042 pages of medical records and reports.
The pre-trial agreement dated January 9, 2001 which was submitted by the parties is incorporated by reference.
8. The depositions of Dr. Robin G. Cummings, Dr. David N. DuPuy, Dr. Russell T. Garland and Dr. George C. Monroe, III and are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. As found in the previous Opinion and Award filed in this case, decedent was formerly employed by defendant-employer as a nurse's aid. Decedent sustained a compensable back injury on January 10, 1993 when an obese patient rolled over onto plaintiff's hands pulling her down towards the patient's bed. Following the injury, decedent underwent surgery to decompress a ruptured disc at L4-5. Although decedent's condition initially improved, she subsequently developed recurrent symptoms and underwent a second operation to decompress both the L4-5 and L5-S1 interspaces. However, decedent redeveloped back pain after a period of improvement and no further medical treatment provided her with adequate relief from her chronic pain.
2. As a complicating factor, decedent, who was only forty-one (41) years old when she was injured, had a heart attack in 1989. Decedent was diabetic and a smoker, and she had a weight problem throughout her life. In addition, decedent's first husband died shortly after her injury which created considerable stress for her. Decedent's diabetes remained poorly controlled and her coronary artery disease progressively worsened during the three years following her injury.
3. By the time decedent's case was originally decided, she had reached maximum medical improvement with respect to her back injury. Decedent had tried unsuccessfully to return to work and it was determined that further efforts to look for employment would be futile. Not only did decedent continue to experience debilitating back and leg pain, she was also impaired due to her cardiovascular disease. Not being able to apportion the disability due to her various health problems, Deputy Commissioner Shuping held that decedent was totally disabled due to her back injury and ordered continuing payment of compensation for total disability.
4. In August 1996, two months after the first decision was filed, decedent was referred to Dr. Cummings, a cardiothoracic surgeon, by her regular treating cardiologist, Dr. Denardo, who wanted an opinion regarding whether decedent would benefit from coronary bypass surgery. Decedent had had a cardiac catheterization which revealed significant disease in two vessels. After examining decedent and reviewing her medical records, Dr. Cummings concluded that decedent was not a surgical candidate due to her small arteries and multiple blockages. Consequently, only further medical management was recommended for decedent's coronary artery disease.
5. In September and October 1996, decedent was apparently referred to a pain clinic program. Decedent advised Dr. Daley, her internist, that she did not feel physically capable of participating in the program, and he gave her a note which limited the time she could stand each day. Decedent was subsequently referred to another pain clinic where she was evaluated in March 1997. Shortly after starting that program, decedent developed chest pain, so the program was terminated until she was cleared by a cardiologist to participate in it. Although further efforts were made to have decedent undergo a pain clinic or work hardening program, she apparently never attempted to participate in such a program thereafter.
6. After developing the chest pain in March 1997, decedent underwent another cardiac catheterization. On April 28, 1997, decedent returned to Dr. Cummings complaining of increased fatigue and shortness of breath with exertion. Dr. Cummings referred decedent's films to a doctor at Duke Medical Center for another opinion regarding whether bypass surgery was advisable, and it was agreed that her arteries were of such poor quality that the procedure would not benefit her. Consequently, decedent was sent back to Dr. Denardo for follow-up care. Dr. Denardo continued to note progression of her coronary artery disease with episodes of chest pain plus problems with shortness of breath and fatigue on exertion.
7. Decedent also saw Dr. Daley on a regular basis for follow-up regarding her other general health problems including her diabetes, which remained poorly controlled despite use of insulin, her hypertension, which was well controlled with medication, and her hypercholesterolemia, which was usually under control but sometimes not. Decedent's cholesterol level was significantly elevated in March and September 1997. Decedent was also unable to lose weight and she weighed around 250 pounds during most of the time in question. However, decedent attempted to quit smoking in late 1995 and early 1996, and she subsequently advised Dr. Cummings that it had made her very anxious so that she had not been able to lose weight. Although decedent told her doctors that she had stopped smoking, she was apparently unable to stop completely prior to her death.
8. Decedent's coronary artery disease progressively worsened and in September 1998 Dr. Denardo advised her to limit her physical activity. In March 1999, decedent began seeing Dr. Monroe, an internist whose office was closer to her home. Dr. Monroe noted that diagnostic tests had revealed extensive blockages in the three main arteries of decedent's heart and that the heart had a poor ejection fraction and was therefore not pumping blood at a normal strength. Despite taking a lot of insulin, decedent's diabetes was still under poor control. Decedent also had no pulses in her feet, which indicated poor circulation, a problem likely associated with her diabetes. Dr. Monroe prescribed medication for decedent's various health problems, although he deferred to her new cardiologist, Dr. Beard, for medical management of her coronary artery disease. Dr. Monroe also did not treat decedent's back problems.
9. Decedent continued to complain of back pain and on September 22, 1999 was seen by Dr. DuPuy, an orthopedic surgeon. Dr. DuPuy diagnosed decedent with failed laminectomy syndrome. Although Dr. DuPuy would normally have prescribed a physical rehabilitation program, decedent was not a suitable candidate for such a program due to her cardiac status. Dr. Dupuy subsequently gave decedent a trigger point injection when she had a flare-up of symptoms, but the injection apparently caused an increase in her blood sugar. Consequently, Dr. DuPuy recommended no further treatment except for medication.
10. By December 1999, decedent was found to have early kidney damage from her diabetes. In January and February 2000 decedent was hospitalized for complaints of chest pain, shortness of breath and weakness. Decedent was diagnosed with ischemic cardiomyopathy and was noted to have Class III congestive heart failure symptoms and an ejection fraction of twenty percent. However, it appeared that decedent had not had another heart attack. Dr. Monroe examined decedent on April 13 and May 18, 2000. Although decedent had gained some weight by that time, her diabetes was under better control. However, decedent was experiencing worse back pain.
11. On May 22, 2000 decedent was sick with nausea and vomiting all day and was experiencing chest pain. Decedent's husband called an ambulance for her when he got home from work that evening, but she refused to go to the hospital. When decedent's husband called a second time later that night, she agreed to be taken to the hospital. During transport, decedent said that she was not having chest pain. However, when decedent was being moved to another stretcher at the hospital, she went into respiratory arrest. With cardiopulmonary resuscitation, decedent stabilized for a short while but then went into cardiac arrest. Decedent could not be revived despite aggressive resuscitative efforts. The emergency room physician determined that decedent's death was due to cardiac arrest probably due to an acute myocardial infarction. In view of her extensive cardiac history, no autopsy was performed.
12. The Death Certificate subsequently filed with the Register of Deeds specified that decedent died of myocardial ischemia from coronary artery disease.
13. Defendants originally requested a hearing in this case regarding decedent's continuing disability and its relationship with her back injury. However, little evidence was offered on that issue. Dr. DuPuy was the only orthopedic surgeon, who saw decedent specifically for her back condition after the previous Opinion and Award was filed, and his findings were consistent with the prior findings of fact. Decedent continued to experience chronic back pain with flare-ups of worse pain. Due to her other health problems, decedent could not undergo a rehabilitation program so her condition had not improved and was not expected to improve. Decedent remained unable to work as a result of the injury until the date of her death on May 22, 2000.
14. Decedent died more than six years after her injury at work and more than two years after the June 21, 1996 Opinion and Award in which she was found to be totally disabled.
15. Decedent's husband, plaintiff Hubert Ingram, has claimed that decedent died as a proximate result of her back injury on the theory that she was inactive due to back pain so that she gained weight and so her diabetes was aggravated, and that the progression of her coronary artery disease was due to aggravation of her diabetes. However, Mr. Ingram's allegation was not supported by the evidence. Dr. Cummings was the only heart specialist who testified regarding this issue, and in his opinion it would be speculative to relate decedent's coronary artery disease to her back injury and hard to blame her death on the injury. There was also no mention of the back injury as a contributing cause on decedent's death certificate.
16. The primary factors in decedent's coronary artery disease were her diabetes and her long history of cigarette smoking. Decedent's history of high cholesterol, high blood pressure, obesity and her family history of heart disease were also factors. Decedent had been obese since she was a child and had weighed more than 300 pounds as a youth. It was clear from the evidence that decedent's weight was less dependent upon her diabetic control than factors such as trying to stop smoking. By September 1996, decedent's cardiac condition was such that it was more limiting on her activity than her back condition, and her coronary artery disease progressed steadily thereafter.
17. The back injury giving rise to this claim was not a proximate cause of decedent's death on May 22, 2000.
18. Decedent's diabetes, coronary artery disease and other general health problems preexisted the injury in question and were not materially aggravated by the injury. Consequently, the medical treatment provided for those conditions was not a proximate result of decedent's back injury.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Decedent did not sustain a change of condition for the better with respect to her back condition after the previous Opinion and Award was filed in the case. Decedent remained entitled to compensation for total disability until the date of her death. N.C.G.S. § 97-29; N.C.G.S. § 97-47.
2. Since decedent's death did not occur within six years of her injury at work or within two years after the final determination of disability was made in the previous Opinion and Award, and since her death was not a proximate result of the injury, plaintiff is not entitled to death benefits. N.C.G.S. § 97-38.
3. Although defendants are liable for all medical expenses arising from decedent's back injury, they are not liable to pay for medical treatment for her diabetes, her coronary artery disease and her other preexisting health problems, which conditions were not a proximate result of her injury. N.C.G.S. § 97-2 (19) and N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for death benefits is DENIED.
2. Plaintiff's claim for payment of medical expenses relating to treatment for decedent's diabetes, coronary artery disease and other general health problems is also DENIED.
3. Each side shall pay its own costs.
This the ___ day of February 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER